UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHAD D. COTTER,

                        Plaintiff,

        v.

CAROLYN W. COLVIN,

                        Defendant.

NO:  2:16-CV-00318-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

        BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 14. This matter was submitted for consideration without oral argument. Plaintiff was represented by Dana C. Madsen. Defendant was represented by Terrye E. Shea. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

**JURISDICTION**

Plaintiff Chad D. Cotter protectively filed for disability insurance benefits, and supplemental security income ("SSI"), on April 16, 2012. Tr. 230-42. Plaintiff alleged an onset date of June 30, 2010. Tr. 230, 237. Benefits were denied initially (Tr. 141-47) and upon reconsideration (Tr. 149-53). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Caroline Siderius on January 8, 2015. Tr. 36-63. Plaintiff was represented by counsel and testified at the hearing. *Id.* Medical expert Margaret Moore, Ph.D. also testified. Tr. 40-43. A subsequent hearing was held on April 2, 2015; during which Plaintiff testified again. Tr. 64-91. Medical expert Darius Ghazi, M.D., and vocational expert Daniel R. McKinney, also testified. The ALJ denied benefits (Tr. 17-35) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Chad D. Cotter ("Plaintiff") was 36 years old at the time of the first hearing. Tr. 44. Plaintiff finished high school, and testified he was in special education "all the way through" school, and primarily in spelling and reading. Tr. 44-45. At the

time of the hearing, Plaintiff lived with his mother, had no children, and did not leave the house very often. Tr. 44, 54-55. He testified that he did a little bit of vacuuming and cooking; did his own laundry; and his friends took him to go grocery shopping. Tr. 53. Plaintiff's work history since 1998 is almost exclusively doing hard physical labor, such as: construction work of various kinds; concrete foundations; and apprentice electrician. Tr. 46-48, 283. In 2004, he was in a motorcycle accident that resulted in a separation of his left shoulder. *See* Tr. 354.

Plaintiff testified that he quit working in June 2010 due to pain described by Plaintiff as "electricity going down both legs" and an inability to lift his right arm. Tr. 48-49. However, as noted by the ALJ, the earliest medical evidence during the adjudicatory period is Plaintiff's office visit with Dr. Belinda Escanio in May 2011, nearly a year after his alleged onset date of disability; during which Plaintiff reported that he had not seen a doctor in 15 years due to lack of insurance. Plaintiff alleges disability based on degenerative disc disease, learning disorder, and rotator cuff tendonitis with impingement. *See* Tr. 141. At the first hearing, Plaintiff testified that he can only walk 100 feet at one stretch; stand for an hour at most; can only pick up ten pounds at most; and his back starts to "throb" after sitting for an hour. Tr. 48-51. He also testified that he has to lay down for a total

of six hours a day, for one to two hours at a time; and only sleeps for two hours a night due to pain. Tr. 52.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that

it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 30, 2010, the alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, degenerative joint disease of the bilateral shoulders, learning disorder. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally lift and carry up to 10 pounds and frequently lift and carry up to 5 pounds. He can sit for up to 6 hours in an 8-hour day and stand and walk for up to 6 hours in an 8-hour day. The claimant needs to change positions every hour for 5 minutes at a time. The claimant cannot climb ladders, ropes, or scaffolds. He can occasionally crawl, crouch, bend, stoop, and kneel. The claimant can occasionally reach overhead with both arms. The claimant is limited to simple, repetitive, 3-step

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

tasks, no detailed work. The claimant cannot perform any job requiring more than 6th grade math skills.

Tr. 24.  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 29.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production assembler and packing line worker.  Tr. 30.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 30, 2010, through the date of the decision.  Tr. 31.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

## DISCUSSION

### A. Adverse Credibility Finding

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 25. Plaintiff argues the ALJ improperly discredited Plaintiff's symptom claims. ECF No. 13 at 8-13. The ALJ listed five reasons in support of the adverse credibility finding. First, the ALJ found

> while [Plaintiff] does have evidence of impairment in the shoulder and lumbar spine, the objective medical evidence is not consistent with the extreme levels of pain alleged by the claimant. Imaging has shown mild degenerative disc disease some disc bulge but no evidence of nerve root entrapment such that it would cause the type of radiculopathy as alleged by the claimant. Imaging and examination of the shoulder also supports some degree of limitation, especially in the right shoulder, but again, not the extreme degree as per the claimant.

Tr. 28. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). At the first hearing, Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

testified that he experiences "electricity" going down both legs every day, that sometimes "collapses [him] down or paralyzes [him];" can't lift his arm right arm for "even a minute;" can only walk 100 feet at one stretch and stand for an hour at most; can only pick up ten pounds at most; and his back starts to "throb" after sitting for an hour. Tr. 48-51. He also testified that he has to lay down for a total of six hours a day, for one to two hours at a time; and only sleeps for two hours a night due to pain. Tr. 52. At the second hearing, Plaintiff testified that he has to lay down eight times a day for an hour at a time; can walk 100 yards; can lift ten pounds; and it hurts to raise his right arm. Tr. 78-79.

However, as noted by the ALJ, in May 2011, while reporting increased shoulder pain when lifting his right arm, and right lower back pain described as 10/10 on the pain scale; upon exam Dr. Escanio found Plaintiff had normal musculature, no joint deformities or abnormalities, and normal range of motion in all four extremities for his age. Tr. 25, 334-35. X-rays of Plaintiff's shoulder and spine, respectively, showed mild narrowing of the L5-S1 disc space but "otherwise unremarkable examination;" and "no significant abnormalities." Tr. 336-37. The ALJ found these results were not consistent with the level of pain alleged by Plaintiff. Tr. 25.

The next medical visit in the record is with orthopedist William Shanks, ten months later in March 2012, during which Plaintiff reported lumbar pain and

radiculopathy from his lumbar spine into his thighs; and right shoulder popping

and grating.  Tr. 25.  Dr. Shanks noted tenderness at the L3-4 midline; lateral

bending and twisting "with pain at the L3 level;" right shoulder tenderness, limited

range of motion, and pain with lifting that "might be consistent with impingement

syndrome." Tr. 25 (citing Tr. 340).  Dr. Shanks ordered an MRI of Plaintiff's

lumbar spine which found "evidence of DDD from the L3 level distally to the L5

level." Tr. 340-41.  However, it is notable that Dr. Shanks did not make any

specific findings as to Plaintiff's right shoulder complaints; noted that he would

"mostly likely" require "some form of surgical treatment" for his left shoulder

problems; and recommended a program of conservative treatment to "better

control his low back symptoms." Tr. 341.  In May 2012, Plaintiff reported "some

right shoulder issues but [Plaintiff] feels not too bad now," and physical

examination found "some mild pain" but no paraspinal pain, but normal reflexes

and strength (Tr. 349-50); and in June 2012 physical examination findings were the

same and Plaintiff reported back pain was "about" the same (Tr. 347).  Tr. 26.  In

August 2012, Dr. Robert Rose diagnosed degenerative disc disease of the lumbar

spine, without findings of acute radiculopathy; and acromioclavicular degenerative

arthorosis, bilateral shoulders, left greater than right, with impingement syndrome

bilaterally, NOS; but as correctly noted by the ALJ, Dr. Rose's objective findings

showed little pain, and he did not opine as to any functional limitations.  Tr. 26

(citing Tr. 356). In March 2013, Plaintiff described his back as "overall ok but not doing much;" he did not have shoulder related complaints; and Jeremy Lewis, D.O. noted that Plaintiff "was doing relatively well but needs to keep activity minimal." Tr. 431. In July 2013, Plaintiff reported "infrequent but severe pain that starts from his right side and like electricity, goes down both legs and collapses him;" however Plaintiff reported "no pain in his back or lower extremities" on the day he reported that symptom, and he denied numbness, tingling, or weakness on a constant basis. Tr. 412. After that visit, Dr. David Vanos ordered a SPECT scan to evaluate sacroiliac joint arthropathy; the results of which were normal. Tr. 404, 413. Finally, as noted by the ALJ, "[a]dditional records dated through September 2014 show some treatment for various acute conditions but none for his shoulders or back." Tr. 27 (citing Tr. 380-403).

Plaintiff cites evidence from the medical record that would tend to support his symptom testimony, including: Dr. Shanks' finding "prominence of AC joint at the left shoulder" and observed right shoulder, cervical and lumbar tenderness (Tr. 339-40); degenerative disc disease diagnosed through x-rays and MRI (Tr. 340); limited range of motion during Dr. Rose's examination (Tr. 356); and Dr. Jay Toews, a mental health practitioner's note that Plaintiff "demonstrated moderately severe pain behavior" (Tr. 363). ECF No. 13 at 9-10. Plaintiff also argues that there was "no reasonable basis" for the ALJ's conclusion that the record contained

"no evidence of nerve root entrapment such that would cause the type of radiculopathy as alleged by the [Plaintiff];" because no medical opinion noted that nerve entrapment "must be shown to prove radiculopathy," and the ALJ did not examine the medical expert "regarding this issue." ECF No. 13 at 10 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ must not succumb to the temptation to play doctor and make independent medical findings)). However, contrary to Plaintiff's argument, the ALJ did not find that nerve root entrapment "must be shown" to prove radiculopathy, she merely noted that the record did not include this evidence. Moreover, the medical expert at the second hearing, Dr. Darius Ghazi, testified that Plaintiff had no signs of nerve damage, and that Plaintiff's complaints of pain radiating to the lower extremities did not correlate with physical findings in the record. Tr. 75-76. Thus, the Court finds that regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on substantial evidence, as discussed in detail above, supporting his finding that Plaintiff's claimed limitations were not consistent with the overall medical record. *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The inconsistency between the "extreme levels of pain alleged by" Plaintiff's testimony, and the objective evidence, was a clear and convincing reason, supported by substantial evidence, for the ALJ to find Plaintiff was not entirely credible.

Second, the ALJ found that Plaintiff "has received limited treatment since the alleged onset date and primary care records show that he has gone many, many months without seeking care for his shoulders or spine." Tr. 28. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security

Ruling ("SSR") 96-7p (July 2, 1996), *available at* 1996 WL 374186 at *7.[1]

Plaintiff argues that "the record shows [Plaintiff] lacked medical insurance for some time and then lacked the financial resources to follow through on some treatment;" and thus it was "not appropriate to discount [Plaintiff's] symptom claims for lack of funds."  ECF No. 13 at 11; *see Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (disability benefits may not be denied because of a claimant's inability to afford treatment).  The first medical visit in the record during the adjudicatory period, in May 2011, did indicate that Plaintiff had not seen a doctor in 15 years due to not having insurance.  Tr. 332.  However, the ALJ supports this reasoning by pointing to additional gaps in treatment records during which there is no indication that Plaintiff was unable to afford treatment, including: no treatment for back or shoulder pain between September 2013 and September 2014 (Tr. 27); and a lack of treatment for five months after an epidural shot for his spine, which

---

[1] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. SSR 16-3p (March 16, 2016), *available at* 2016 WL 1119029.  The new ruling also provides that the ALJ must consider possible reasons why a claimant did not comply with treatment or seek treatment. S.S.R. 16-3p at *9. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

he claimed made the pain worse (Tr. 55).  Moreover, the record indicates that Plaintiff did have medical insurance from April 2012 through March 2015.  Tr. 347-53; 380-458.  Thus, the ALJ reasonably considered Plaintiff's unexplained lack of treatment during the relevant period as a reason to find his testimony not entirely credible.

Third, the ALJ found that Plaintiff "has never been prescribed opiates for either his shoulders or his back, indicating his treatment providers did not find it necessary."  Tr. 28-29.  Evidence of conservative treatment is sufficient to discount Plaintiff's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Plaintiff argues the ALJ is "simply mistaken" and cites records wherein Plaintiff was prescribed hydrocodone, ultram, naproxen and flexeril.  ECF No. 13 at 11.  However, consistent with the ALJ's finding, as noted by Defendant, Plaintiff was prescribed hydrocodone "only twice, each time due to short-term reports of acute pain in his toe, *not* for his shoulder or back pain."  ECF No. 14 at 12-13 (emphasis added) (citing Tr. 399, 457).  Plaintiff was prescribed ultram on two occasions for his back pain (Tr. 427, 454); as well as naproxen (a NSAID), and flexeril (a muscle relaxer), a handful of times throughout the record for his back pain.  Tr. 350, 388, 437, 445.  The Court also notes that in March 2012, examining orthopedist Dr. Shanks recommended an MRI study of Plaintiff's left shoulder; and an evaluation at a spine clinic "for a program of conservative

measure[s] to better control his back symptoms." Tr. 341. Again, regardless of evidence that Plaintiff was prescribed medication to address his pain, it was reasonable for the ALJ to consider the lack of opiates prescribed for Plaintiff's back and shoulder pain as evidence of conservative treatment sufficient to discount Plaintiff's testimony that back and shoulder pain was so severe as to be completely disabling. See *Parra*, 481 F.3d at 751; see also *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

Fourth, the ALJ found Plaintiff's allegations were not fully credible because he "has stated that he had to cease working as a construction worker due to back pain but specifically told Dr. Shanks that he was laid off and that is why he stopped working." Tr. 29. When considering a claimant's contention that she cannot work because of her impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to her alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible); *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (in making a credibility evaluation, the ALJ may also rely on ordinary techniques of credibility evaluation, including inconsistent statements). Plaintiff reported to Dr. Shanks in March 2012 that "[h]e has worked

in construction labor jobs, but due to a layoff [sic] from the result of the economy, he states he has not worked for a year or so. He was getting pain in his back during the time he was working." Tr. 338. Plaintiff argues this "single notation is an aberration and does not constitute a clear and convincing reason" to find Plaintiff not credible. ECF No. 13 at 12. However, it was reasonable for the ALJ to rely on this statement as a reason to find Plaintiff not entirely credible, both as a reason for stopping work unrelated to his alleged disability, and a statement inconsistent with his claim that he stopped working because of his alleged back and shoulder pain.

Fifth, and finally, the ALJ found Plaintiff's "level of activity reported to his care providers exceeds that of his testimony, and there is little to no evidence that his impairments affect his ability to perform activities of daily living." Tr. 29. It is well-settled that a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.*; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability."). However, even where activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Plaintiff argues it is "unclear which activities" Plaintiff reported to his care providers that exceed the scope of his testimony "so as to impact his

credibility." ECF No. 13 at 11. The Court agrees. Plaintiff consistently reported to care providers, in his function report, and in his testimony; that he could attend to his self-care, assist with grocery shopping, and perform light housework. Tr. 53-54, 80, 86, 354, 268-70, 361. Moreover, in making a credibility finding, the ALJ "must specifically identify the testimony she or he finds not to be credible, and must explain what evidence undermines the testimony." *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir.2001). Here, the ALJ failed to provide the requisite detail to sufficiently determine whether Plaintiff's daily activities contradicted his claims of disability. *See Thomas*, 278 F.3d 958 (ALJ must 'make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.'). However, any error is harmless because, as discussed in detail above, the ALJ's ultimate credibility finding is adequately supported by substantial evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Overall, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan,* 246 F.3d at 1201–02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted). Plaintiff argues the ALJ committed reversible error by (1) improperly rejecting a portion of Jay Toews, Ed.D.'s opinion; (2) improperly rejecting a portion of Belinda Escanio, M.D.'s opinion; and (3) failing to weigh the opinions of Jeremy Lewis, D.O., Robert J. Rose, M.D., and Margaret Moore, Ph.D. ECF No. 13 at 14-16.

### 1. Dr. Jay Toews

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22

In August 2012, examining psychologist Dr. Toews opined that Plaintiff is capable of remembering "simple one and two-step instructions;" and "appears capable of remembering routine, repetitive types of work activity." Tr. 363. Dr. Toews also noted that Plaintiff showed no signs of coordination or dexterity problems; and there was "no indication of any mood or affective barriers to employability." Tr. 363. The ALJ granted Dr. Toews' opinion "great weight but for the 'one and two step' qualifier to simple work, as the [Plaintiff's] subtest score on block design and matrix reasoning were higher than his mean subtest score, indicating more ability with analyzing whole part relationships and solving new puzzles. This reasonably allows for the completion of at least a newly learned three step task." Tr. 29, 362. Plaintiff argues the ALJ made an "untenable and inappropriate independent medical finding" because "[t]here is no basis for the ALJ's interpretation of the test score or the ALJ's conclusion." ECF No. 13 at 14-15. Generally, the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, it is inappropriate for the ALJ to substitute his or her own medical judgment for that of medical professionals. *Tackett*, 180 F.3d at 1102-03. Here, Dr. Toews specifically considered that Plaintiff's block design and matrix reasoning scores were "significantly higher" than his mean subtest score; and found it "indicates [Plaintiff] has relatively good skills in visual-spatial

perception and visual-motor coordination and speed." Tr. 362. Dr. Toews also

noted that there is "a moderate difference in ability to process routine visual

information and ability to attend to and process more complex verbal information;"

and presumably based on this finding, he limited Plaintiff to remembering simple

one and two step instructions. Tr. 363. As noted by Plaintiff, the ALJ also did not

support his finding with medical evidence from the record; nor did she examine the

psychological expert as to Plaintiff's ability to complete newly learned three step

tasks, as opposed to the "two-step" qualifier opined by Dr. Toews. *See* Tr. 40-43.

Thus, it was inappropriate for the ALJ to substitute her own medical judgment for

that of Dr. Toews.

However, regardless of this error, Plaintiff fails to identify with specificity

how it was consequential to the ALJ's ultimate determination that Plaintiff was not

disabled. *See Molina*, 674 F.3d at 1115 (error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination."). The ALJ's

assessed RFC limited Plaintiff to simple, repetitive, 3-step tasks; with no detailed

work. Tr. 24. Then, at step five, the ALJ relied on the VE's testimony that given

this RFC, Plaintiff would be able to perform the requirements of a production

assembler and a packing line worker. However, these occupations do not include a

requirement that an individual must be able to perform a three-step task. See DOT

706.687.010, *available at* 1991 WL 679074; DOT 753.687-038, *available at* 1991

WL 680354. Thus, even assuming that the ALJ improperly rejected the portion of

Dr. Toews' opinion that Plaintiff was capable of remembering simple one or two-

step instructions, any error is harmless because it is irrelevant to the ALJ's ultimate

disability determination. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050,

1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or

irrelevant to ALJ's ultimate disability conclusion).

### 2. Dr. Belinda Escanio

In May 2011, treating physician Dr. Escanio opined that Plaintiff could stand

for one hour in an eight hour work day; sit for one hour in an eight hour work day;

lift ten pounds occasionally; and lift five pounds frequently. Tr. 375. The ALJ

accorded Dr. Escanio's opinion "some weight as to the lifting and carrying

restrictions." Tr. 29. However, the ALJ found "the stand/walk limits are not

consistent with the objective findings pertaining to the claimant's lumbar spine;

even in the face of imaging and the claimant's pain complaints[,] limiting the

claimant to one hour total standing and one hour total sitting is unsubstantiated."

Tr. 29. An ALJ may discredit a physicians' opinions that are conclusory, brief,

and unsupported by the record as a whole or by objective medical findings. *Batson

v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff argues

that "if the treating source has seen a patient a number of times and long enough to

have obtained a longitudinal picture of the impairment we will give the opinion

controlling weight." ECF No. 13 at 15. However, as noted by Defendant, Dr.

Escanio's opinion was dated May 6, 2011, the same day she initially examined

Plaintiff, and before she reviewed any objective test results; and during her first

examination she found no abnormalities in Plaintiff's back or spine and normal

range of motion in all extremities.  Tr. 332-33, 376.  Moreover, as discussed above,

and noted by the ALJ in the decision, the overall medical record does not support

the severity of Dr. Escanio's limitations on Plaintiff's standing and walking.  For

example, Dr. Escanio's noted on May 19, 2011, less than two weeks after the

opinion at issue, that the x-rays of Plaintiff's spine were largely normal. Tr. 25,

334. Dr. Shanks reviewed MRI results that confirmed degenerative disc disease of

the lumbar spine from the L3-4 level distally to L5-S1; but recommended that

Plaintiff pursue conservative treatment to control his low back pain, and found that

it was appropriate for Plaintiff to participate in employment activities.  Tr. 341-45.

Dr. Rose, an examining physician, diagnosed degenerative disc disease of the

lumbosacral spine without findings of acute radiculopathy; but examination

findings "showed little pain or functional limits."  Tr. 26, 355-56.

Thus, the overall record supports the ALJ's finding that the objective

findings pertaining to Plaintiff's lumbar spine are not consistent with the severity

of the stand/walk limitations opined by Dr. Escanio.  This was a specific and

legitimate reason for the ALJ to reject this portion of Dr. Escanio's opinion.

### 3. "Unexamined Opinions"

In March 2013, treating physician Dr. Jeremy Lewis noted at an "office visit" that Plaintiff was "doing relatively well but needs to keep activity minimal." Tr. 430-31. In August 2012, Dr. Robert Rose, an examining physician, completed a consultative examination of Plaintiff, and diagnosed: acromioclavicular degenerative arthrosis, bilateral shoulders, left greater than right; with impingement syndrome bilaterally. Tr. 356. Plaintiff argues the ALJ improperly failed to weigh these "opinions;" which Plaintiff contends are supportive of his claimed limitations. ECF No. 13 at 15-16. As an initial matter, the Court notes that the ALJ did specifically consider this evidence as part of the decision. *See* Tr. 26-27. Further, the ALJ did not err in failing to specifically discuss and provide reasons for rejecting these "opinions" because neither one assessed any specific functional limitations as to Plaintiff's ability to work. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability.").

Finally, Plaintiff argues that the ALJ failed to weigh medical expert Dr. Margaret Moore's opinion testimony; and that the RFC failed account for Dr. Moore's opined moderate limitation on Plaintiff's concentration, persistence and pace. ECF No. 13 at 16 (citing Tr. 42). However, contrary to this assertion, the ALJ did grant Dr. Moore's opinion "great weight," and noted her opinion that Plaintiff was "moderately limited in concentration, persistence, and pace due to his learning disability." Tr. 29. Thus, the pertinent question is whether the ALJ's RFC properly accounted for the moderate limitations on Plaintiff's concentration, persistence, and pace, as opined by Dr. Moore. Here, the RFC limited Plaintiff to "simple, repetitive, 3-step tasks, [and] no detailed work." Tr. 24. The Court finds the ALJ properly accounted for Dr. Moore's opinion when formulating this RFC, which is consistent with the medical record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Of particular note, the only other psychological opinion in the record from examining provider Dr. Toews, which also included extensive objective testing, found Plaintiff was capable of "remembering simple one and two step instructions" and "performing routine, repetitive types of work activity." Tr. 363. For all of these reasons, the ALJ's RFC assessment adequately captured the restrictions identified

in the medical testimony of Dr. Moore related to Plaintiff's concentration, persistence, or pace, by limiting Plaintiff to simple, repetitive, non-detailed work.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony, and properly weighted the medical opinion evidence. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** September 15, 2017.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29